695 So.2d 357 (1997)
RIS INVESTMENT GROUP, INC., f/k/a Resort at Indian Springs, Appellant,
v.
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION DIVISION OF FLORIDA LAND SALES CONDOMINIUMS AND MOBILE HOMES, Appellee.
No. 96-0511.
District Court of Appeal of Florida, Fourth District.
January 29, 1997.
Order Granting Clarification March 19, 1997.
Michael A. Hanzman of Hanzman, Criden, Korge & Chaykin, P.A., Miami, and Keith E. Hope of Keith E. Hope, P.A., Key Biscayne, for appellant.
Kathryn E. Price, Tallahassee, for appellee.
POLEN, Judge.
RIS Investment Group, Inc. (RIS), appeals from a final order of the Florida Department of Business and Professional Regulation, Division of Florida Land Sales, Condominiums, and Mobile Homes (the Department), determining that RIS shall remit to Indian Springs Condominium Association assessments due on the units RIS owned from November 16, 1987, the date its declaration of condominium was recorded, through the date of the sale of these units. The order appealed also imposes a civil penalty in the amount of $5600.00. We reverse.
RIS is the developer of the Briarwood Condominium in Palm Beach County. On April 5, 1995, the Department issued a notice to show cause to RIS, requiring it to show cause why the Department should not enter a cease or desist order and/or impose civil penalties and/or enter an order requiring RIS to take certain affirmative actions as a result of various violations of Chapter 718, Florida Statutes (1995). One violation alleged was that RIS, while in control of the association, failed to pay assessments due on developer-owned units, from November 16, 1987, the date the units were created through recordation of the declaration, until the sale of the units, in violation of section *358 718.116(1)(a) and (9)(a), Florida Statutes.[1] A hearing was held at which RIS maintained that it paid assessments on units after they were constructed as dwellings from the time of the issuance of a certificate of occupancy for each unit until the unit was sold, and that it was not required to pay these assessments on the raw land from the date of the recording of the declaration. On January 16, 1996, the Department issued its final orders determining that RIS was liable for the assessments from the date the declaration was recorded and determining that RIS shall remit to Indian Springs Condominium Association assessments due on the units RIS owned from November 16, 1987, through the date of the sale of these units. We disagree with the Department's conclusion that RIS was liable for the assessments from the date the declaration was recorded.
It is the Department's contention that the following provision from RIS's declaration of condominium required RIS to pay assessments on the units from the date the declaration was recorded:
7.9 Developer to pay maintenance. The Developer shall be treated the same as any other Unit Owner for the purposes of payment of its share of the Common Expenses and Assessments relating to those units owned by the developer from the recording of the declaration for as long as said units are owned by the developer.
The Department's position is that there is nothing in this declaration provision relating the developer's payment of assessments to the issuance of a certificate of occupancy. However, the Department fails to consider the definition of "unit" contained in the Condominium Act. It appears from the final order that the Department erroneously concluded that RIS had to specifically exempt raw land from its definition of unit, whereas section 718.103(24), Florida Statutes (1995), actually provides as follows:
"Unit" means a part of the condominium property which is subject to exclusive ownership. A unit may be in improvements, land, or land and improvements together, as specified in the declaration.

This court's opinion in Welleby Condominium Ass'n One, Inc. v. William Lyon Co., 522 So.2d 35 (Fla. 4th DCA 1988), also supports our conclusion that the Department should have considered how a unit was defined in the declaration before deciding that RIS was responsible for the assessments from the date the declaration was recorded. In Welleby, we affirmed the circuit court's summary judgment in favor of a developer that the lands owned by the developer were not subject to assessment because the vacant land in question was not "condominium units" as described in the declaration of condominium or as defined in the Florida Statutes in effect at the time the declaration of condominium was recorded. Id. at 36. In affirming the circuit court, this court adopted the order of the trial court which noted the definition of unit in section 711.03(15), which is the same definition contained in 718.103(24), at bar. The order also underlined the language in the statute "as specified in the declaration," and noted that the definition permits a unit which is the subject of an assessment to be described in several manners as set forth in the declaration.
It is also pertinent that in Welleby, rather than using the word "unit," the declaration of condominium in question used the word "condominium parcel" as the object of assessment. The definition of "condominium parcel" as contained in that declaration was as follows:
An apartment together with the undivided share in the common elements and all its easements, rights and interests which are pertinent to the apartment.
An apartment in that declaration was defined as a "unit; individual private dwelling." Based on the above definitions, this court in Welleby adopted the trial court's following pertinent conclusions:
17. The definition section of the Declaration of Condominium specifically defines what a condominium parcel is. It is an apartment; an individual private dwelling.

*359 It is not raw, unimproved lands. The scrivener (sic) of the Declaration of Condominium possessed the option, pursuant to § 711.103(15) [§ 711.03(15) ], of describing a "unit" (that object of any condominium assessment) in any number of different ways pursuant to that Florida Statute. In this instance the scrivener, (sic) taking advantage of the option granted to him by that Section, chose to describe a "unit" in terms of a "condominium parcel", which is an individual private dwelling. As permitted by Statute, this Declaration specifically describes the object of assessments as land and improvements, namely, an individual private dwelling, and the use of the term "condominium parcel" is so specifically used throughout this Declaration of Condominium, as to preclude any other interpretation as to what the object of assessments was to be against. Assessments, according to this Declaration, could not be assessed and levied against anything other than an individual private dwelling, and the Declaration would not permit any interpretation allowing an assessment against raw, unimproved lands upon which there is no private dwelling.
As in Welleby, the scrivener of the declaration of condominium for RIS had the option of defining a condominium unit in one of several ways. Although the definition of "unit" at bar might not be as clearly set out as the definition of "condominium parcel" in the Welleby declaration, we think it is clear in reading the declaration that the term "unit" was not meant to encompass raw land. In the instant declaration, section 3.2 discusses the boundaries of a unit as follows:
Each unit consists of the dwelling applicable to the Unit, less that portion of the basic Building structure for the dwelling lying within each dwellings maximum dimension as shown on the survey graphic description and plot plan attached hereto... The boundary lines of each Unit are the unfinished surface of the ceilings and floors, perimeter walls and any interior walls that are shown within the maximum limits of each unit on the plot plan. (emphasis supplied).
We also think that the following portions of the declaration are indicative of the intent not to include land by itself within the definition of a unit:
2.2 The Condominium ... is divided into 160 Units which.. are shown in the survey of the land on which a graphic description of the improvements in which the Units are located and a plot plan thereof which, together with this Declaration are in sufficient detail to identify the common elements and each Unit and the relative location and the approximate dimensions thereof.... Each unit shall be a part of the Condominium Parcel which contains the Unit.
3.4 ... The Condominium Parcel, consisting of the Unit together with the undivided share of the common elements which are appurtenant to the Unit, and the limited common elements which are appurtenant to the Unit, constitutes a separate parcel of real property, the ownership of which is in fee simple ...
Although RIS itself concedes that the definition of unit within the declaration could have been more precise, based on the above consistent use of the term unit, it does not appear that raw land was ever meant to be encompassed within that definition. Accordingly, we reverse the order of the Department requiring RIS to remit assessments due from the date of the recording of the declaration, and imposing the civil penalty.
We would point out, however, that our decision to reverse is not based on RIS's claim that the Department did not have jurisdiction to resolve this issue because it involves the interpretation of a contract, which is a judicial function. We believe the Department was acting within its authority to enforce the Condominium Act. Appellant's arguments regarding the constitutionality of the act will not be addressed as they were raised for the first time in the reply brief. See Snyder v. Volkswagen of America, Inc., 574 So.2d 1161 (Fla. 4th DCA 1991)(an issue raised for the first time on appeal in appellants' reply brief, even though properly preserved *360 for appeal, will not be considered by this court).
REVERSED.
PARIENTE, J., and TAYLOR, CAROLE Y., Associate Judge, concur.

ON MOTION FOR CLARIFICATION
We grant appellee's Motion for Clarification, and delete from our January 29, 1997, opinion any reference to appellant's civil penalty being reversed. Appellant conceded it was not appealing the civil penalty, and our reference to it was in error.
PARIENTE, J., and TAYLOR, CAROLE Y., Associate Judge, concur.
NOTES
[1] Section 718.116 is the section of the Condominium Act requiring all unit owners, regardless of how title is acquired, to pay assessments which come due while they are the unit owner, with only limited circumstances when the payment of these assessments will be excused.